UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AGCS MARINE INSURANCE COMPANY,

Plaintiff,

v.

EXPEDITORS INTERNATIONAL OCEAN, INC., et al.,

Defendants.

CASE NO. C18-0614JLR

ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

There are two motions before the court: (1) Defendants Expeditors International Ocean, Inc. and Expeditors International of Washington, Inc.'s (collectively "Expeditors") motion for partial summary judgment (Expeditors MSJ (Dkt. # 31)); and (2) Plaintiff AGCS Marine Insurance Company's ("AGCS") cross motion for partial summary judgment (AGCS MSJ (Dkt. # 33); *see also* AGCS Surreply (Dkt. # 37)). Both

//

motions are opposed. (*See* AGCS MSJ[1]; Expeditors MSJ Reply (Dkt. # 31).) The court has considered the motions, the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Expeditors' motion for partial summary judgment and DENIES AGCS' cross-motion for summary judgment.

## II. BACKGROUND

This is a breach of contract action related to a cargo shipping accident that occurred in Shanghai, China in May 2017. (*See* Compl. ¶¶ 5-10.[2]) AGCS is a cargo insurer subrogated to the rights of two non-parties, Corning Incorporated and Corning Precision Materials Co., Ltd. (collectively, "Corning"). (*Id.* ¶ 1.) In spring 2017, Corning contracted with Expeditors—a licensed Ocean Transport Intermediary—to ship seven containers containing 8,880 pieces of flat glass from Busan, South Korea, to Shanghai, China.[3] (*Id.* ¶¶ 2, 5; *see also* Block Decl. (Dkt. # 32), ¶ 2, Ex. A ("Howes 30(b)(6) Dep."), Exs. 4-8; Yi Decl. (Dkt. # 35) ¶¶ 2-4.) AGCS alleges that Corning's cargo was damaged in May 2017 when a container was dropped on top of Corning's

---

[1] AGCS' cross motion for summary judgment also includes its opposition to Expeditors' motion for summary judgment. (*See* AGCS MSJ at 1.)

[2] The court is aware of the general rule that unverified allegations in pleadings do not themselves create genuine disputes of material fact on summary judgment. *See Moran v. Selig*, 447 F.3d 748, 759 (9th Cir., 2006); *James v. FPI Mgmt., Inc.*, No. C18 998RSM, 2019 WL 6468552, at *2 (W.D. Wash. Dec. 2, 2019) ("[A] plaintiff cannot rely on the allegations of its unverified complaint to create genuine disputes of material facts."). However, the court relies on the pleadings solely to provide background details about this lawsuit and not as substantive evidence in support of the cross-motions for summary judgment.

[3] Expeditors claims that it booked transit of the cargo with third-party carrier Korea Marine Transport Co., Ltd. ("KMTC"). (*See* Expeditors MSJ at 2.)

containers at a terminal in Shanghai, and that AGCS paid Corning $790,645.43 in insurance proceeds to cover the damage. (Compl. ¶ 6.) The parties' cross motions pertain to the extent of Expeditor's entitlement to limit its liability for damages caused to Corning's shipment pursuant to the terms of its contractual agreement with Corning. (*See generally* Expeditors MSJ; AGCS MSJ.)

On April 25, 2017, Expeditors delivered seven shipping containers to Corning and Corning loaded 8,800 pieces of flat glass onto 28 IDP crates—a specific type of crate used to ship glass—and then loaded the 28 IDP crates into the seven containers. (Yi Decl. ¶ 4; Howes 30(b)(6) Dep. at 221:16-222:1.) That same day, Expeditors picked up the loaded containers for delivery via ocean shipment. (Yi Decl. ¶ 4.)

Corning prepared three invoices for the shipment and emailed those invoices to Expeditors on April 25, 2017. (*Id.* ¶ 7-8, Exs. 1-2.) The first invoice lists the "Description of Goods" shipped as "5,400 PC" of "Gen8 0.5T TFT Glass" and "2,880 PC" of "Gen8 0.4T CF Glass." (*Id.* ¶ 7, Ex. 1 at 1.) The second invoice lists the "Description of Goods" shipped as "600 PC" of "Gen8 0.5T CF Glass." (*Id.* ¶ 7, Ex. 1 at 2.) The third invoice lists the "Description of Goods" shipped as "28 PC" of "G8 IDP CRATE." (*Id.* ¶ 7, Ex. 2 at 1.)

According to Expeditors, it created a "draft bill of lading" or a "draft Sea Waybill" on April 25, 2017, and emailed that draft bill of lading to Corning for comment on April 26, 2017. (Howes 30(b)(6) Dep. at 139:23-140:5; *see also id.* Ex. 10 at 2-3 (copy of draft bill of lading).) Expeditors' Federal Rule of Civil Procedure 30(b)(6) deponent explained that it is Expeditors' "standard normal practice" to email out a draft bill of lading before

issuing a final Sea Waybill and that the purpose of sending draft bills of lading is to "verify marks and numbers, piece counts, et cetera, to ensure that it is in compliance with [a shipper's] expectations so that there are no problems when the goods reach destination" and also to ensure there are "no hold-ups with customs or any other regulatory body." (Howes 30(b)(6) Dep. at 139:23-140:5.) The draft bill of lading describes the "No. of Package" as "7 CTNR (28 CRT)" and includes descriptions of the type and quantity of glass included in the shipment. (*See id.* Ex. 10 at 2-3.)

Neither party submitted a copy of the email from Expeditors to Corning that attached the draft bill of lading in support of their motion. AGCS claims—without citation to the record—that it "has no record indicating Expeditors sent a draft Sea Waybill to review." (*See* AGCS MSJ at 4.) Expeditors testified that it maintains an "eDoc" system that acts as an "electronic filing cabinet" for Expeditors' shipping documents. (Howes 30(b)(6) Dep. at 29:22-30:6; *id.*, Ex. 10 at 1 (screenshot of eDoc report for the Corning system at issue).) Expeditors explained that documents may be emailed out of the eDoc system to Expeditors' clients through a "system generated" email process. (*See id.* at 193:22-195:13.) When Expeditors sends a document out by email through the eDoc system, the eDoc system does not store the email; instead, the system reflects the email transmission by placing an "E" next to the filename of the document. (*Id.* at 139:3-140:8, 163:20-164:3, 193:7-9; 193:22-195:13.) A print out of the eDoc system page for the Corning shipment at issue in this case includes an "E" next to filename for the draft Sea Waybill:

//

| | | | | | |
|---|---|---|---|---|---|
| 64302885... | POD - Proof of Delivery | SIGNATURE | | 1 | 5/25/2017 3:16... |
| 64302885... | Sea Waybill - Draft | 4/25/2017 5:00... | E | 2 | 4/25/2017 5:01... |
| 64302885 | Sea Waybill - Rated | 4/27/2017 5:44 | D | 2 | 4/27/2017 5:44... |
| 64302885... | Sea Waybill - Unrated | 4/27/2017 5:44 | DEX | 2 | 4/27/2017 5:44... |
| 64302885... | Shipment Advice | 4/27/2017 9:33... | | 2 | 4/27/2017 9:24... |
| 64302885... | Shipment Advice | 5/10/2017 7:07... | | 2 | 5/10/2017 7:08 |
| 64302885... | VGM from Shipper | | D | 1 | 4/25/2017 4:24... |
| 64302885... | VGM from Shipper | | D | 1 | 4/25/2017 4:32... |

(*See id.*, Ex. 10 at 1, 2-3 (copy of the draft Sea Waybill retrieved from eDoc system).) Expeditors states that this shows that the draft Sea Waybill was emailed to Corning on April 25, 2017. (*Id.* at 139:3-140:8, 163:20-164:3.)

Although the parties dispute whether Corning ever received a draft Sea Waybill from Expeditors, the parties agree that Expeditors issued the final Sea Waybill to Corning on April 27, 2017, shortly after the ship departed with Corning's cargo onboard. (*See* Howes 30(b)(6) Dep., Ex. 4 ("Sea Waybill"); Yi Decl. ¶¶ 9-10.) The Sea Waybill describes the "Nos. of Packages" shipped as "7 CTNR (28 CRT)." (Sea Waybill at 1.) The Sea Waybill also lists the "Description of Packages and Goods" as "28 Crate (8,880 PCS) of Flat Glass" and includes specific descriptions of the type of glass shipped and a reference to Corning's invoices for the shipment. (*See id.*) The Sea Waybill indicates that the gross weight of the shipment was 75,501.00 kg. (*See id.*) Finally, the Sea Waybill includes a watermark stating that the Sea Waybill is "subject to terms and conditions" and fine print at the bottom of the page indicating that Expeditors' services are subject to the terms and conditions of the Sea Waybill. (*See id.* at 1-2.) The parties agree that the final Sea Waybill and the Terms and Conditions accompanying the Sea

Waybill include the relevant contractual terms for the current motions. (AGCS MSJ at 7; Expeditors MSJ at 5; Howes 30(b)(6) Dep., Ex. 8 ("Terms and Conditions").)

The Terms and Conditions incorporated into the final Sea Waybill include limitation of liability provisions that are at the heart of the current cross motions. As relevant here, Section 6 of the Terms and Conditions, entitled "CARRIER RESPONSIBILITY – Limitations" sets forth the following limitation of liability clause:

> (a) <u>Package. Customary Freight Unit, or Shipping Unit Limitation.</u>
>
> ***
>
> (iii) Where neither [the Carriage of Goods by Sea Act ("COGSA")] applies, nor any legislation applying the Hague or Hague Visby Rules is compulsorily applicable, Carrier's liability shall not exceed US$500 per Shipping Unit or US$2 per kilo of the gross weight of the Goods lost, damaged, or in respect of which the claim arises, or the value of such Goods, whichever is less.

(Terms and Conditions § 6(a)(iii).[4]) The Terms and Conditions include a general definition of the term "Shipping Unit":

> "Shipping Unit" means each physical unit or piece of cargo not shipped in a package including articles or things of any description whatsoever, except Goods shipped in bulk and irrespective of the weight or measurement unit employed in calculating freight charges, and includes the term "customary freight unit" as used in the Hague Rules, the Hague-Visby Rules, or any national legislation adopting the Hague Rules or the Hague-Visby Rules.

//

[4] The Terms and Conditions include at three limitation of liability provisions, each of which applies to different types of shipments depending on the law governing the shipment at issue. (*See* Terms and Conditions §§ 6(a)(i)-(iii).) The court focuses on Section 6(a)(iii) of the Terms and Conditions because the parties agree that that provision applies to the underlying dispute. (*See* Expeditors MSJ at 6-7; AGCS MSJ at 9-10 n.5.)

(*Id.* ¶ 1(a).) However, the limitation of liability section of the Terms and Conditions also includes a specific definition of the terms "Package or Shipping Unit" for purposes of setting the limit of Expeditor's liability:

> (c) Definition of Package or Shipping Unit. Where a Container is used to consolidate Goods and such Container is Stuffed by Carrier, the number of packages or Shipping Units stated on the face of this Sea Waybill in the box provided shall be deemed the number of packages or Shipping Units for the purpose of any limit of liability per package or Shipping Unit provided in any applicable international convention or national Law relating to the carriage of goods by sea. Except as aforesaid the Container shall be considered the package or Shipping Unit. . . .

(*Id.* ¶ 6(c).)

## III. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). To satisfy its burden at summary judgment, a moving party with the burden of persuasion "must establish beyond controversy every essential element of its . . . claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks and citation omitted). By contrast, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party

does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)). The court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)); *see also ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)

("We evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

2. Contract Interpretation

Section 27(a) of the Terms and Conditions, entitled "LAW; DISPUTES; VENUE; SEVERABILITY; ETC," provides that federal law or Washington law governs the Sea Waybill: "This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States." (Terms and Conditions § 27(a).) Here, the Sea Waybill is a maritime contract because its "primary objective is to accomplish the transportation of goods by sea." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (citations omitted). "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Id.* at 23-24 (citations omitted). Because this dispute involves transportation of goods by sea between Korea and China and a cargo accident that occurred in China, this dispute is not "inherently local" to Washington. *See id.* at 27-28. Thus, federal maritime law controls.

"Since the bill of lading is a contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction." *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001) (quoting *Henley Drilling Co. v. McGee*, 36 F.3d 143, 148 n.11 (1st Cir. 1994)). "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first." *Klamath Water Users*

*Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

**B. AGCS' Cross Motion**

As a threshold matter, the court addresses Expeditors' argument that AGCS' cross motion should be rejected because it is procedurally deficient. (*See* Expeditors Reply at 2.) Western District of Washington Local Civil Rule 7(k) "encourage[s]," but does not mandate, parties who anticipate filing cross motions to stipulate to a briefing schedule. Local Civil Rules W.D. Wash. LCR 7(k). The rule does require, however, that a party filing a cross motion "note the motion in accordance with the local rules." *Id.* Local Civil Rule 7(d)(3) states that motions for summary judgment must be "noted for consideration on a date no earlier than the fourth Friday after filing and service of the motion." *Id.* LCR 7(d)(3). AGCS filed its cross motion on May 4, 2020. (*See generally* AGCS MSJ.) Although AGCS failed to comply with Local Civil Rule 7(b)(1)'s requirement that all motions state the noting date in the caption of the motion, *see* Local Civil Rules W.D. Wash. LCR 7(b)(1), the docket reflects that AGCS' motion was properly noted for consideration on May 29, 2020—the fourth Friday after May 4, 2020. (*See generally* Dkt. # 33.) Although the court orders AGCS to carefully comply with the local rules going forward, it would not serve the interests of judicial efficiency to strike AGCS' cross motion—especially where AGCS' cross motion presents the exact same

limitation of liability issues as Expeditors' motion. Thus, the court rejects Expeditors' argument that the court should disregard AGCS' cross motion as procedurally deficient.

**C. Limitation of Liability**

1. "Shipping Unit"

To resolve the parties' cross motions for partial summary judgment, the court must first interpret the term "Shipping Unit" as used in Section 6(a)(iii) of the Terms and Conditions in the Sea Waybill: "Carrier's liability shall not exceed US$500 per Shipping Unit or US$2 per kilo of the gross weight of the Goods lost, damaged, or in respect of which the claim arises, or the value of such Goods, whichever is less." (Terms and Conditions § 6(a)(iii).) Expeditors argues that Section 6(a)(iii) is enforceable and applies to this dispute. (*See* Expeditors MSJ at 8-16.) Further, AGCS explicitly stipulates that Section 6(a)(iii) applies to this dispute and entitles Expeditors to limit its liability for any damage caused to Corning's cargo. (*See* AGCS MSJ at 9-10 n. 5 ("Both parties stipulate that under the facts of this case, Expeditors is entitled to limit its liability for the loss of the flat glass pursuant to ¶ 6(a)(iii) of its [Terms and Conditions].").) Thus, the court assumes that AGCS agreed to the Terms and Conditions and is bound by the limitation of liability clause contained in Section 6(a)(iii).

Expeditors argues that "Shipping Unit" for purposes of this shipment means the shipping containers that Corning used to ship the crates full of flat glass. (*See* Expeditors MSJ at 17-18.) If that argument proves correct, then Expeditors' liability is limited to $3,500.00—$500.00 for each of the seven containers that Expeditors shipped for Corning. AGCS argues that the term "Shipping Unit" used in Section 6(a)(iii) is

ambiguous and must "drop out" because it cannot be applied to Corning's shipment, which AGCS claims means that Expeditors' liability is limited by the weight of the shipment. (*See* AGCS MSJ at 1-2, 9-10.) Section 6(a)(iii) instructs that the liability limitation may be set at "US$2 per kilo of the gross weight of the Goods" if that amount is less than $500 per "Shipping Unit" and less than the value of the goods. (*See* Terms and Conditions § 6(a)(iii).) As confirmed by the Sea Waybill, Corning's shipment weighed 75,501 kilograms (Sea Waybill at 1), which means that Expeditors' liability is limited to $151,002.00 if AGCS' interpretation is correct.

Expeditors' argument that "Shipping Unit" should be defined as each container Expeditors shipped for Corning relies heavily on Section 6(c) of the Terms and Conditions, which states:

> (c) <u>Definition of Package or Shipping Unit.</u> Where a Container is used to consolidate Goods and such Container is Stuffed by Carrier, the number of packages or Shipping Units stated on the face of this Sea Waybill in the box provided shall be deemed the number of packages or Shipping Units for the purpose of any limit of liability per package or Shipping Unit provided in any applicable international convention or national Law relating to the carriage of goods by sea. Except as aforesaid the Container shall be considered the package or Shipping Unit. As to Goods shipped in bulk the limitation applicable thereto shall be the limitation provided in such Law which may be applicable and in no event shall anything herein be construed to be a waiver of limitation as to Goods shipped in bulk.

(Terms and Conditions § 6(c).) Expeditors argues that this provision defines the term "Shipping Unit" as used in Section 6(a)(iii) because it relates specifically to defining the terms Package and Shipping Unit for purposes of setting Expeditors' liability limit. (*See* Expeditors Reply at 7.)

//

The court agrees with Expeditors. The provisions in Section 6 of the Terms and Conditions pertain exclusively to Expeditors' liability for shipments. (*See* Terms and Conditions § 6.) Section 6(a) sets forth three different limitation of liability provisions that apply based on the law governing the shipment at issue. (*Id.* § 6(a)(i)-(iii).) Each of these provisions uses one or both of the terms "package" and "Shipping Unit." (*See id.*) Section 6(c) then defines the terms "package" and "Shipping Unit" under circumstances "[w]here a Container is used to consolidate goods" for purposes of setting Expeditors' liability. (*See id.* § 6(c).) Pursuant to that section, "[w]here a Container is used to consolidate Goods and such Container is Stuffed by Carrier," then the "number of packages or Shipping Units stated on the face of this Sea Waybill . . . shall be deemed the number of packages or Shipping Units for the purpose of any limit of liability per package or Shipping Unit provided in any applicable international convention or national Law relating to the carriage of goods by sea." (*See id.*) Here, however, Expeditors, who is the "Carrier" as that term is used in the Sea Waybill (*see id.* § 1(a)), did not stuff the "Containers"; Corning did (Yi Decl. ¶ 4). Thus, the first sentence of Section 6(c) is inapplicable. However, the second sentence of Section 6(c) applies where the first sentence is inapplicable: "Except as aforesaid the Container shall be considered the package or Shipping Unit." (Terms and Conditions § 6(c).) The court concludes that this language unambiguously states that the terms "package" and "Shipping Unit"—as those terms are used in Section 6 of the Terms and Conditions—mean "the Container" for purposes of setting the limit of Expeditors' liability for its shipment of Corning's flat glass.

AGCS' central counterargument to this interpretation of the term "Shipping Unit" is that it ignores the definition of "Shipping Unit" contained in Section 1(a) of the Sea Waybill. (*See* AGCS MSJ at 14-18.) That provision defines "Shipping Unit" as follows:

> "Shipping Unit" means each physical unit or piece of cargo not shipped in a package including articles or things of any description whatsoever, except Goods shipped in bulk and irrespective of the weight or measurement unit employed in calculating freight charges, and includes the term "customary freight unit" as used in the Hague Rules, the Hague-Visby Rules, or any national legislation adopting the Hague Rules or the Hague-Visby Rules.

(Terms and Conditions § 1(a).) AGCS argues that this constitutes a second definition of "Shipping Unit" and that the Terms and Conditions are ambiguous as to what definition should apply. (*See* AGCS MSJ at 14-18.)

The problem with this argument, however, is that it fails to read the contract as a cohesive whole and ignores the well-established maxim of contractual interpretation instructing that "[s]pecific terms of a contract govern inconsistent, more general terms." *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1099 (9th Cir. 2006) (citing *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003). Section 1(a) of the Terms and Conditions set forth generally applicable definitions of certain terms as those terms are used in the Sea Waybill. (*See* Terms and Conditions § 1(a).) Section 6 of the Terms and Conditions is dedicated to setting the limits Expeditors' liability, and that section includes a specific definition of "package" and "Shipping Unit" in Section 6(c) that sets Expeditors' liability for certain types of shipments by defining those terms as they are used in the limitation of liability provisions. (*See id.* § 6.) Thus, even if AGCS is correct that Expeditors' interpretation of Section 6(c) conflicts with Section 1(a), that

conflict is irrelevant because the specific definition in Section 6(c) controls over the general definition in Section 1(a).[5]

2. "The Container"

Although the court agrees with Expeditors that Section 6(c) provides the applicable definition of the term "Shipping Unit" as that term is used in Section 6(a)(iii) for Corning's shipment, that does not end the inquiry. As noted above, Section 6(c) unambiguously states that "the Container" shall be deemed the "Shipping Unit" for shipments where a "Container" is used but not "Stuffed" by Expeditors. (*See* Terms and Conditions § 6(c).) The court concludes, however, that the term "Container" as used in Section 6(c) is itself ambiguous. Section 1(a) defines "Container" as "any container, trailer, transportation tank, lift van, flat, pallet, or any similar article of transport used to hold or consolidate goods." As applied to Corning's shipment, that general definition is ambiguous because a "Container" could be the seven shipping containers that Expeditors provided and shipped for Corning, or it could be the 28 IDP crates that Corning used to ship the flat glass.

Expeditors argues that the term "Container" used in Section 6(c) "clearly refers to an ocean shipping container" because Section 6(c) refers to "Containers" being "Stuffed," which implies that the term applies to ocean shipping containers. (*See* Expeditors Reply at 9-10.) However, "Stuffed" is also defined in Section 1(a) as follows: "'Stuffed'

[5] Because the Section 1(a) definition of "Shipping Unit" is inapplicable to Corning's shipment, the court need not decide whether AGCS is correct that Section 1(a) conflicts with Section 6(c).

includes filled, consolidated, packed, loaded, or secured, and references to 'Stuffed' include placing in or on the relevant Container." (Terms and Conditions § 1(a).) Under this definition, Corning also "Stuffed" the IDP crates. Thus, this argument does not resolve the ambiguity at issue.

Indeed, Expeditors concedes that Corning's IDP crates "might fit the definition of '[C]ontainer' in the instant factual scenario," but faults AGCS for failing to propose this definition of "Container" as an alternative to its argument that liability should be limited according to the weight of the shipment. (*See* Expeditors Reply at 10.) The court agrees with Expeditors that neither party asks the court to rule as a matter of law that the term "Container" as used in Section 6(c) refers to an IDP crate instead of an ocean shipping container. However, Expeditors asks the court to conclude that the term "Container" refers to an ocean shipping container, and the court cannot reach that conclusion on the current record because the term is ambiguous and there is insufficient evidence in the record for the court to resolve that ambiguity.

3. <u>Summary</u>

In sum, the court concludes that the term "Shipping Unit" used in Section 6(a)(iii) is defined by Section 6(c) as "the Container" for purposes of Corning's shipment and that the term "Container" is ambiguous because that term could refer to the seven ocean shipping containers provided by Expeditors or to the 28 IDP crates Corning used to ship its glass. Regardless of whether "Container" is defined as the seven ocean shipping containers or 28 IDP crates, however, the resulting liability limitation—either $3,500.00 or $14,000.00—is less than the limitation that would apply using the gross weight of the

shipment. Thus, pursuant to Section 6(a)(iii) of the Terms and Conditions, Expeditors' liability is limited to "US$500" per "Container," which means that Expeditors' liability is limited to either $3,500.00 or $14,000.00. Accordingly, because Expeditors asked the court to conclude that its liability is limited to $3,500.00 and AGCS asks the court to limit Expeditors' liability to $14,000.00, the court DENIES both parties motions for cross summary judgment.[6]

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Expeditors motion for partial summary judgment (Dkt. # 31) and DENIES AGCS' cross motion for partial summary judgment (Dkt. # 33).

Dated this 6th day of July, 2020.

JAMES L. ROBART
United States District Judge

[6] The court notes that Expeditors expended significant energy on the circumstances surrounding the draft Sea Waybill and whether Expeditors altered Corning's description of the cargo during the process of finalizing the Sea Waybill. (*See* Expeditors MSJ at 3-4, 13-14; Expeditors Reply at 2-7.) However, AGCS did not dispute the enforceability of any of the relevant terms of the Sea Waybill or the Terms and Conditions. (*See* AGCS MSJ at 9-10 n.5.) Indeed, AGCS argues that the terms on the face of the Sea Waybill and draft Sea Waybill are irrelevant to the limitation of liability issues. (*See id.* at 21.) The court agrees and, as such, declines to wade into the parties' dispute of the relevance of the draft Sea Waybill.